**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: | Chapter 11 |
| IQ DENTAL SUPPLY, LLC, | Case No. 23-21402 (SLM) |
| Debtor. | |

**DISCLOSURE STATEMENT PURSUANT TO**
**SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING**
**CHAPTER 11 PLAN PROPOSED BY THE DEBTOR-IN-POSSESSION**

PLEASE READ THIS DISCLOSURE STATEMENT (THIS "DISCLOSURE STATEMENT") CAREFULLY.   THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR ON YOUR DECISION TO ACCEPT OR REJECT THE EIGHTH AMENDED PLAN OF REORGANIZATION (THE "PLAN"), WHICH IS ANNEXED HERETO AS **EXHIBIT A**, BEING PROPOSED BY IQ DENTAL SUPPLY LLC (THE "DEBTOR" OR "PLAN PROPONENT").

THE DEBTOR BELIEVES THAT THIS PLAN IS IN THE BEST INTERESTS OF ALL CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE.   THE DEBTOR URGES THAT CREDITORS ENTITLED TO VOTE ACCEPT THE PLAN.

**TRENK ISABEL SIDDIQI**
**& SHAHDANIAN P.C.**
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2370
Livingston, New Jersey 07039
Telephone:  (973) 533-1000
Email:  rtrenk@trenkisabel.law
Email:  rroglieri@trenkisabel.law

*Counsel to IQ Dental Supply, LLC,*
*Chapter 11 Debtor and Debtor-in-Possession*

## TABLE OF CONTENTS

DISCLAIMER ........................................................................................................1

ARTICLE I. INTRODUCTION ..............................................................................2

ARTICLE II. PURPOSE OF THIS DISCLOSURE STATEMENT ...........................................2

ARTICLE III. CONFIRMATION PROCEDURES ...................................................3

ARTICLE IV. BACKGROUND AND SUMMARY OF CHAPTER 11 CASE .........................7

ARTICLE V. THE DEBTOR'S BANKRUPTCY ...................................................11

ARTICLE VI. SUMMARY OF THE PLAN OF REORGANIZATION ...................................13

ARTICLE VII. TREATMENT OF UNCLASSIFIED CLAIMS ...............................................15

ARTICLE VIII. TREATMENT OF CLAIMS...........................................................16

ARTICLE IX. PROVISIONS GOVERNING DISTRIBUTIONS .............................................18

ARTICLE X. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
    21

ARTICLE XI. CONFIRMATION AND CONSUMMATION OF THE PLAN.........................21

ARTICLE XII. EFFECTS OF CONFIRMATION ....................................................22

ARTICLE XIII. EFFECT OF PLAN ON CLAIMS AND INTERESTS...................................23

ARTICLE XIV. RETENTION OF JURISDICTION .................................................26

ARTICLE XV. MISCELLANEOUS PROVISIONS OF THE PLAN .......................................28

ARTICLE XVI. RISK FACTORS/TAX CONSEQUENCES....................................................31

ARTICLE XVII. FEASIBILITY OF THE PLAN .......................................................36

ARTICLE XXVIII. BEST INTERESTS TEST..........................................................38

## <u>DISCLAIMER</u>

THIS DISCLOSURE STATEMENT FOR THE PLAN AND RELATED MATERIALS DELIVERED HEREWITH ARE BEING PROVIDED BY THE PLAN PROPONENT TO KNOWN HOLDERS OF CLAIMS PURSUANT TO SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE.[1]

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN. THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING. NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, NOR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS. CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

---

[1] Capitalized terms used but not defined herein shall have the same meaning ascribed to such term in the Plan.

## ARTICLE I.
## INTRODUCTION

On the Petition Date, the Debtor commenced its bankruptcy case by filing a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. Chapter 11 of the Bankruptcy Code allows the Debtor to propose a plan of reorganization. Since the Petition Date, the Debtor has remained in possession of its assets and management of its affairs as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The document you are reading is the Disclosure Statement for the Plan which is annexed hereto as **Exhibit A**. The Plan constitutes a Chapter 11 plan of reorganization. Except as set forth in the Plan or otherwise provided by order of the Bankruptcy Court, Distributions will occur on the Effective Date or as soon thereafter as is practicable and at various intervals thereafter. In the Plan Proponent's opinion, the treatment of Claims under the Plan provides a greater recovery for Creditors than that which is likely to be achieved under other alternatives.

**Accordingly, the Plan Proponent believes that Confirmation of the Plan is in the best interests of all Creditors and, therefore, urges all Creditors to vote to accept the Plan.**

## ARTICLE II.
## PURPOSE OF THIS DISCLOSURE STATEMENT

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan. This Disclosure Statement contains the following exhibits: (i) the Plan (**Exhibit A**); (ii) Financial Projections (**Exhibit B**); and (iii) the Debtor's liquidation analysis (**Exhibit C**).

READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW

ABOUT:

     (1)     WHO CAN VOTE OR OBJECT,

     (2)     THE PROPOSED TREATMENT OF YOUR CLAIM (I.E., WHAT YOUR CLAIM WILL RECEIVE IF THE PLAN IS CONFIRMED), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN A CHAPTER 7 LIQUIDATION,

     (3)     THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,

     (4)     WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN,

     (5)     THE EFFECT OF CONFIRMATION, AND

(6)      THE FEASIBILITY OF THE PLAN.

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Bankruptcy Code Section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in Code Section 1125(a) as "information of a kind, and in sufficient detail," about the Debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the Debtor to make an informed judgment about accepting or rejecting the Plan. The Bankruptcy Court ("Court") has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Bankruptcy Code Section 1125.

This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtor or who have filed a proof of claim against the Debtor as of the date of approval of this Disclosure Statement. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

## ARTICLE III.
## CONFIRMATION PROCEDURES

**THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  IF THE BANKRUPTCY COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL HOLDERS OF CLAIMS IN THE CHAPTER 11 CASE.**

If the Plan is confirmed, the Distributions provided for in the Plan will be in exchange for, and in complete satisfaction, discharge and release of, all Claims against the Debtor or any of its assets or properties, including any Claim accruing after the Petition Date and before the Effective Date.  Except as set forth otherwise in the Plan, as of the Effective Date of the Plan, all Holders of Claims will be precluded from asserting any Claim against the Debtor, the Reorganized Debtor or their assets, or other interests in the Debtor or the Reorganized Debtor based on any transaction or other activity of any kind that occurred before the Effective Date.

### A.  Requirements for Confirmation

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

3

which they may wish to consider, as well as certain deadlines for filing claims. The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in this Chapter 11 Case are that the Plan (a) is accepted by Impaired Classes that have the right to vote; and (b) the Plan is feasible. The Bankruptcy Court must also find that:

    1.    the Plan has classified Claims in a permissible manner;

    2.    the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and

    3.    the Plan has been proposed in good faith. See 11 U.S.C. §§ 1123, 1129.

### B. Persons Potentially Eligible to Vote on the Plan

In determining acceptance of the Plan, votes will only be counted if submitted by a Creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the hearing on Confirmation of the Plan, has filed with the Bankruptcy Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan. The Ballot Form that you received does not constitute a proof of claim. If you are uncertain whether your Claim has been correctly scheduled, you should check the Debtor's Schedules, which are on file at the office of the Clerk of the Bankruptcy Court located at: United States Bankruptcy Court, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102. The Clerk of the Bankruptcy Court will not provide this information by telephone.

The following are the unclassified Claims: Fee Claims, Administrative Expense Claims, U.S. Trustee Fees, and Priority Tax Claims. Unclassified Claims are not Impaired by the Plan. Each Holder of an unclassified Claim is conclusively presumed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan.

Class 1 is unimpaired and not entitled to vote on the Plan as it is deemed to accept the Plan. Classes 2, 3, 4 and 5, are Impaired under the Plan and are entitled to vote on the Plan.

### C. Plan Voting Procedures

The Ballots received by Holders of Impaired Claims do not constitute a proof of claim. If a creditor is uncertain whether its claim has been correctly scheduled, the creditor should check the Debtor's Schedules, which are on file at the Office of the Clerk of the Bankruptcy Court located at: United States Bankruptcy Court, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102. The Clerk of the Bankruptcy Court will not provide this information by telephone.

4888-6021-6983, v. 3

**1.        Deadline For Voting For or Against the Plan**

In order for a Ballot to count, the creditor must (1) complete, date and properly execute the Ballot and (2) properly deliver the Ballot to Debtor's counsel by mail or overnight courier at the following address:

> Trenk Isabel Siddiqi & Shahdanian P.C.
> 290 West Mount Pleasant Avenue, Suite 2370
> Livingston, New Jersey 07039
> Attn.: Robert S. Roglieri, Esq.

Debtor's counsel must **ACTUALLY RECEIVE** original ballots on or before **March ___, 2024 at 5:00 p.m.** (prevailing Eastern Time) (the "Voting Deadline").  Except as otherwise provided, you may not change your vote once Debtor's counsel receives your ballot.

Any ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.

The following ballots will not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

> 1.        any ballot received after the Voting Deadline, unless the Debtor grants an extension of the Voting Deadline with respect to such ballot or the Bankruptcy Court grants such an extension;

> 2.        any ballot that is illegible or contains insufficient information to permit the identification of the claimant after the Debtor reaches out to the person or entity that submitted such Ballot for clarification;

> 3.        any ballot cast by a person or entity that does not hold a Claim in a class that is entitled to vote to accept or reject the Plan;

> 4.        any ballot cast for a Claim designated as unliquidated, contingent or disputed or as zero or unknown in amount and for which no Rule 3018(a) motion has been filed by the Rule 3018(a) motion deadline;

> 5.        any ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Plan or that indicates both acceptance and rejection of the Plan; or

> 6.        any unsigned ballot.

**Voting Questions.** If there are any questions regarding the provisions or requirements for voting to accept the Plan or require assistance in completing a Ballot, creditors may contact counsel to the Debtor, Richard D. Trenk or Robert S. Roglieri at 973-533-1000 or by emailing them at rtrenk@trenkisabel.law or rroglieri@trenkisabel.law.

4888-6021-6983, v. 3

2.      **Acceptance of Plan**

The acceptance of the Plan by Impaired Creditors is important.  In order for the Plan to be accepted by Impaired Creditors, a majority in number (*i.e.,* more than half) and two-thirds in dollar amount of the Impaired Classes that vote must vote to accept the Plan. The Debtor urges that Creditors vote to accept the Plan.  **CREDITORS ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY RETURN THEIR BALLOT.   PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF THE CREDITOR'S CLAIM AND THE NAME OF THE CREDITOR.**

**D.  Time and Place of the Confirmation Hearing**

The hearing at which the Bankruptcy Court will determine whether to confirm the Plan will begin on **March ___, 2024 at __:00 _.m. (prevailing Eastern Time)** in Courtroom 3A of the United States Bankruptcy Court, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the hearing.

**E.  Procedure for Objections to Confirmation of the Plan**

Any objection to Confirmation of the Plan must (a) be in writing; (b) state the name and address of the objecting party and the amount of the Claim of such party; and (c) state with particularity the grounds for the objection.  Any objection must be filed with the Bankruptcy Court and served so as to be actually received on or before **March ___, 2024 at __:00 _.m. (prevailing Eastern Time)** (the "Objection Deadline") by:

| | |
|---|---|
| *The Debtor and Reorganized Debtor* | Richard D. Trenk, Esq. |
| | Robert S. Roglieri, Esq. |
| | Trenk Isabel Siddiqi & Shahdanian P.C. |
| | 290 W. Mt. Pleasant Ave., Suite 2350 |
| | Livingston, New Jersey 07039 |
| | rtrenk@trenkisabel.law |
| | rroglieri@trenkisabel.law |
| | |
| *The Office of the United States Trustee* | Rachel Wolf, Esq. |
| | Office of the United States Trustee |
| | for the District of New Jersey |
| | One Newark Center |
| | 1085 Raymond Boulevard, Suite 2100 |
| | Newark, New Jersey 07102 |
| | Rachel.Wolf@usdoj.gov |

**Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court.**

4888-6021-6983, v. 3

**F. Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Debtor's counsel, Richard D. Trenk, Esq. or Robert S. Roglieri, Esq. at Trenk Isabel Siddiqi & Shahdanian P.C., 290 W. Mt. Pleasant Ave., Suite 2370, Livingston, New Jersey 07039, telephone (973) 533-1000 or by emailing rroglieri@trenkisabel.law.

**ARTICLE IV.**
**BACKGROUND AND SUMMARY OF CHAPTER 11 CASE**

**A. Background of Debtor**

SGD International, Inc. ("SGD") and Sergey Kunin ("Kunin") formed the Debtor on February 13, 2009 as a limited liability company organized under the laws of the State of New Jersey. The Debtor's main office is located in Fairfield, New Jersey, but it also operates out of warehouses located in San Antonio, Texas and Deer Park, New York. As of the filing of the bankruptcy, the Debtor has approximately 56 employees (54 full-time employees and 2 part-time employees) and 4 independent contractors.

The Debtor is a retailer of dental supplies, equipment, and services directly to dental offices. The company also offers dental equipment, installation and repairs, with employees on staff to service the equipment. In total, there are approximately 140,000 dental offices in the United States. The Debtor services approximately 12,000 to 14,000 customers. The Debtor also installs dental equipment and provides on-site service and equipment repairs. The Debtor obtains new customers through the salespeople that it employs, social media (Facebook and Instagram) and the company's website. During the height of the COVID-19 pandemic, the Debtor was critical in supplying PPE (personal protective equipment) to front line dentists and hygienists throughout the United States.

The Debtor has two wholly owned subsidiaries – IQ Dental Education Inc. ("IQ Education") and Alliance Dental Supply, Inc. ("Alliance Dental").

IQ Education was formed in 2017 to create an educational program for people seeking to become dental assistants through its online programming. At that time, most dental assistant programs required participants to be in person five days per week, which limited the ability of students to work other jobs while in school. IQ Education allows for more flexibility in training. IQ Education offers dental-related continuing education courses, dental radiology classes, review courses in infection control and general chairside dental assisting. IQ Education is licensed to provide training and certifications in x-ray technology. IQ Education's growth has been stymied by the COVID-19 pandemic and the general downturn in IQ Dental's business, as detailed later in this Declaration. IQ Education has annual revenue of approximately $100,000 per year.

Alliance Dental was formed to sell dental products and equipment outside of the United States. It was formed as a separate entity as a result of various regulations surrounding what equipment and materials can be sold to various countries. Alliance Dental has annual revenue of approximately $600,000 per year.

7

### B.  The Debtor's Management

Kunin holds 50% of the membership interests in the Debtor and SGD holds the remaining 50%.  SGD is a Barbados corporation.

Kunin is the managing member, President and CEO of the Debtor.  Kunin handles all of the day-to-day operations of the Debtor.  Prior to certain recent illnesses including a severe heart attack in June 2023, Kunin worked for the Debtor every day.  Kunin's job responsibilities include marketing the company, communicating and meeting with customers, negotiating contracts, managing the company's office and personnel, and overseeing the finances and accounting of the company.  Following Kunin's heart attack and other illnesses, he was on disability until approximately November 2023.

Kunin attends various conferences throughout the year, including, most recently, the Greater New York Dental Meeting on November 26 through 29, 2023 at the Javits Convention Center in New York City.  Kunin is also a member of the Dental Trade Alliance.

At the time of the Chapter 11 filing, Kunin was earning $2,307.69 per pay period ($60,000/annum).  In addition to his salary, the Debtor was paying $1,950 per month for Kunin's rent.

Effective January 1, 2024, Kunin earned $100,000 per annum and no additional payments were made to Kunin's landlord or on account of his housing.

### C.  The Debtor's Assets

The Debtor's main assets are its inventory of dental supplies and equipment and its accounts receivable.  As of November 27, 2023, the Debtor's inventory based on book value was approximately $7,579,626.93.[2]  The Debtor's accounts receivable as of November 27, 2023 was $2,354,163.95.

The Debtor owns certain general intangibles of unknown value including its customer list, trademarks, and website.

As stated above, the Debtor holds 100% of the interests in both IQ Education and Alliance Dental.

### D.  Circumstances Leading To Bankruptcy

For the calendar years 2018 through 2022, the Debtor's revenue ranged from approximately $26,000,000 in 2018 to a high of approximately $35,000,000 in 2020 and has trended downward in 2021 and 2022, to approximately $33,000,000 and $29,000,000, respectively. As of June 2023, the Debtor is projected to have revenue of approximately $23,000,000. Since achieving a revenue high of $35,000,000 in 2020, the Debtor has experienced a revenue decline of 5% in 2021, and a 12% decline in 2022. For projected 2023, the

---

[2] On January 26, 2024, the Court entered an Order approving A. Atkins Appraisal Corp. to value the Debtor's inventory.  Upon completion, it shall be filed with the Court.

Debtor is on track for a 17% decline in revenue. Therefore, the overall revenue decline from 2020 to projected 2023 is approximately 31%.

The high revenue point of $35,000,000 was the result of selling personal protective equipment (PPE) during the COVID-19 pandemic. The Debtor supplied important PPE to medical and dental offices throughout the pandemic.

In addition to the revenue decline explained above, Kunin is currently engaged in a contested matrimonial proceeding pending in the Superior Court of New Jersey, Essex Vicinage captioned <u>Kunin v. Kunin</u>, Docket No. FM-07-2714-21. These proceedings have greatly impacted Kunin's credit and ability to offer any personal guarantee for a refinance transaction. Kunin has exhausted his entire 401(k). Pursuant to Order of the Matrimonial Court, 50% of Kunin's income must be applied against his <u>pendente lite</u> obligations. In addition, multiple subpoenas were served on the Debtor's secured lender, East West Bank ("<u>EWB</u>"). Following those subpoenas, EWB refused to extend IQ Dental's credit line and placed the loan into default. This has significantly impacted the Debtor's ability to operate.

The steps taken by EWB in shutting down the Debtor's line of credit forced the Debtor to file for Chapter 11 protection. Beginning in September 2023, EWB began limiting and then ultimately shutting down the loan facility provided to the Debtor. Before the facility was shut down, the Debtor's accounts receivable were deposited into an account at EWB with the last four digits -4700. That account was swept daily by EWB to pay down the loan facility. In a separate EWB bank account ending -5094, EWB funded the facility daily based on certain borrowing base certificates. When EWB shut down the loan facility, it continued to sweep the Deposit Account, but stopped funding the Operating Account, leaving the Debtor with no funds to continue operating. EWB bounced critical vendor payments with almost no notice which caused the Debtor to be put on COD or require prepayments before any shipments. This created a further cash crunch that curtailed the Debtor's ability to purchase new inventory to sell to its customers, fund payroll, and other operating expenses.

### E. Capital Structure

#### i. <u>Secured Debt</u>

The Debtor's sole secured debt is held by EWB. The total due to EWB is approximately $3.3 million.

On August 29, 2012, the Debtor and EWB entered into a Promissory Note (the "<u>Note</u>") in the principal amount of $1,500,000. In connection with the Note, EWB and the Debtor entered into a Business Loan Agreement.

In connection with the Note, the Debtor and EWB entered into a Commercial Security Agreement (the "<u>Security Agreement</u>"). The Security Agreement provides for a security interest in all of the Debtor's inventory, chattel paper, deposit accounts, accounts, equipment and general intangibles. It also includes, amongst other things, the proceeds therefrom.

In addition to the collateral set forth above and in connection with the Note, SGD and Kunin executed a Commercial Guaranty (collectively, the "<u>Guarantees</u>"). Kunin also assigned

an insurance policy in the amount of $1,000,000 as additional collateral for the Note.

On August 8, 2013, EWB and the Debtor entered into a Change in Terms Agreement whereby EWB increased the principal amount of the Note to $1,500,000. The maturity date on the Line of Credit was extended from August 24, 2013 to August 24, 2014.

On September 2, 2014, EWB and the Debtor entered into a Change in Terms Agreement whereby EWB increased the principal amount of the Note to $2,500,000. The maturity date on the Line of Credit was extended from October 24, 2014 to October 24, 2015.

On March 4, 2016, EWB and the Debtor entered into a Change in Terms Agreement whereby EWB increased the principal amount of the Note to $3,384,309.04. Also on March 4, 2016, EWB extended the maturity date of the loan facility from March 7, 2016 to January 31, 2017.

On August 17, 2017, EWB and the Debtor entered into a Change in Terms Agreement whereby EWB increased the principal amount of the Note to $3,550,000. The maturity date on the Line of Credit was extended from July 30, 2017 to August 31, 2018.

On April 2, 2019, EWB and the Debtor entered into a Change in Terms Agreement and Third Modification to the Loan Agreement whereby EWB decreased the principal amount of the Note to $3,462,979.68. The maturity date on the Line of Credit was extended from April 27, 2019 to February 27, 2020.

On August 3, 2020, EWB and the Debtor entered into a Change in Terms Agreement whereby EWB decreased the principal amount of the Note to $3,384,309.04. The maturity date on the Line of Credit was extended from August 24, 2020 to July 25, 2021.

On July 28, 2021, EWB and the Debtor entered into a Change in Terms Agreement whereby EWB increased the principal amount of the Note to $4,550,000. The maturity date on the Line of Credit was extended from August 24, 2021 to July 25, 2022.

On October 27, 2022, EWB and the Debtor entered into a Change in Terms Agreement whereby EWB decreased the principal amount of the Note to $4,486,265.57. The maturity date on the Line of Credit was extended from November 30, 2022 to October 23, 2023. Id. The maturity date on the term loan associated with the Loan Facility was extended to July 28, 2026.

On October 10, 2023, EWB sent a default letter (the "<u>Non-Renewal Letter</u>") to the Debtor alleging that the Debtor is and has been in default of the loan facility since December 2022 because the Debtor failed to maintain: (i) a "Maximum Debt minus Subordinated Debt to Effective Tangible Net Worth of 3.75 to 1 as required by the "Financial Covenants and Ratios" section of the Loan Agreement"; and (ii) a "Minimum Debt Coverage Ratio of 1.25 to 1 as required by the "Financial Covenants and Ratios" section of the Loan Agreement." The Non-Renewal Letter further provided that EWB would: (i) charge default interest following the maturity date of the Loan Facility; (ii) not renew the Loan Facility; and (ii) would consider extending the maturity date of the loan to February 23, 2024 if: (a) certain financial conditions were met; (b) the Debtor provided a term sheet for a refinance of the loan by December 15, 2023 with a closing on or before February 23, 2024; and (c) the Debtor paid a $50,000 fee.

Following receipt of the Non-Renewal Letter, EWB provided a Change in Terms Agreement, which decreased the principal amount of the Note to $4,423,928.31, changed the maturity date to February 23, 2024, and increased the interest rate on the Loan Facility to the default interest rate under the Loan Facility. The Debtor did not enter into this agreement.

Following the maturity date on October 23, 2022, EWB shut down the line of credit.

As of December 1, 2023, the outstanding balance on the loan was $3,142,955.05. In addition, the outstanding balance on the term loan from EWB as of November 27, 2023 was $173,928.31.

### ii.    Unsecured Debt

The Debtor has always had strong and mutually beneficial relationships with its trade vendors who are currently owed approximately $4,500,000 as of the Petition Date. These claims are for the delivery of goods and services to the Debtor, which are used in the operation of the business.

**ARTICLE V.**
**THE DEBTOR'S CHAPTER 11 BANKRUPTCY**

### A.  The Debtor's Chapter 11 Filing.

The Debtor filed its voluntary Chapter 11 petition on December 8, 2023.

### i.    First Day Orders

Concurrently with the filing of its chapter 11 petition, the Debtor filed certain motions and proposed Orders (collectively, the "First-Day Orders"). A summary of the relief granted in the First Day Orders is set forth below:

i.   **Cash Collateral Order**. Pursuant to the *Motion Pursuant to 11 U.S.C. §§ 105, 363(c)(2)(B), 363(e), 507(b), Fed. R. Bankr. P. 4001(b), and D.N.J. L.B.R. 4001-4 for Interim and Final Orders Authorizing Use of Cash Collateral* [ECF 3], the Bankruptcy Court entered an Interim Order [ECF 60] and Second Interim Order [ECF 119] that, among other things, (i) permitted the Debtor to continue to use cash collateral; and (ii) granted its secured lender replacement liens. At the time of filing this Disclosure Statement, a Final Hearing on the motion is scheduled for February 20, 2024. [ECF 120].

ii.   **Cash Management Order**. Pursuant to the *Motion For An Order (I) Authorizing The Debtor To Continue And Maintain Their Existing Cash Management System, Bank Accounts And Business Forms, (II) Modifying The Investment Guidelines, (III) Providing The United States Trustee With A 60-Day Objection Period, And (IV) Granting Related Relief* [ECF 6], the Bankruptcy Court entered an Interim Order [ECF 48] that, among other things, (i) authorized the Debtor to continue to use its existing bank accounts and cash management system, and existing checks and business forms; and (ii) waived certain bank account and related requirements

11

of the Office of the United States Trustee.  On January 19, 2024, the Bankruptcy Court entered a final order in connection with the Cash Management Motion. [ECF 121].

iii.    **Wages Order**.  Pursuant to the *Motion For An Order (I) Authorizing The Debtor To (A) Pay Prepetition Wages, and Related Obligations, (B) Pay And Remit Payroll Taxes And Other Deductions To Third Parties, And (C) Honor And Process Workers' Compensation And Employee Benefit Obligations, And (II) Authorizing and Directing All Banks To Honor Checks And Transfers For Payment of Pre-petition Employee Obligations* [ECF 5], the Bankruptcy Court entered an Interim Order [ECF 43] and a Final Order [ECF 123] authorizing the Debtor to, among other things, pay certain prepetition wages and other compensation, continue various benefit programs, and pay other employee-related obligations.

iv.    **Insurance Order**. Pursuant to the *Motion For Interim And Final Orders Authorizing: (I) The Continuation Of The Debtor's Insurance Policies; And (Ii) The Performance Of All Prepetition Obligations Related Thereto* [ECF 14], the Bankruptcy Court entered an Interim Order [ECF 46] and a Final Order [ECF 122] authorizing the Debtor to, among other things, continue its insurance program and pay prepetition obligations related thereto.

v.    **Utilities Order**. Pursuant to the *Motion For Entry Of Interim And Final Orders (I) Prohibiting Utility Companies From Discontinuing, Altering Or Refusing Service On Account Of Prepetition Invoices, (II) Approving The Debtor's Proposed Form Of Adequate Assurance Of Future Payment And (III) Establishing Procedures For Resolving Requests For Additional Adequate Assurance* [ECF 4], the Bankruptcy Court entered an Interim Order [ECF 41] and a Final Order [ECF 124] authorizing and approving the provision of adequate assurance of payment to the Debtor's utility service providers under section 366 of the Bankruptcy Code, while allowing the Debtor to avoid the threat of imminent termination of their utility services from those utility companies.

vi.    **Credit Card Order**.  Pursuant to the *Motion for an Order Authorizing Debtor to Continue Credit Card Facilities* [ECF 7] the Bankruptcy Court entered an order [ECF 45] directing certain payment card processors to honor its prepetition agreement with the Debtor pending assumption or rejection.

**ii.    Employment of Professionals and Advisors**

On December 8, 2023, the Debtor filed an application to approve the retention of Trenk Isabel Siddiqi & Shahdanian P.C. ("TISS") as counsel.  [ECF 10].  TISS's retention was approved on January 2, 2024.  [ECF 92].

On December 19, 2023, the Debtor filed an application to approve the retention of Vestcorp LLC ("Vestcorp") as Accountant.  [ECF 62].  Vestcorp's retention was approved on January 2, 2024.  [ECF 93].

On January 17, 2024, the Debtor filed an application to approve the retention of A. Atkins Appraisal Corp. ("Atkins") as Appraiser. [ECF 116]. On January 23, 2024, the court entered the Order approving Atkin's retention. [ECF 143].

### iii.   Claims Process and Bar Date

#### a.   Schedules and Statement of Financial Affairs

On the Petition Date, the Debtor filed for protection under Chapter 11 of the Bankruptcy Code. [ECF 1]. The Debtor's schedules and statement of financial affairs (as amended, the "Debtor's Schedules") were filed simultaneously with the Chapter 11 Petition.

#### b.   Section 341(a) Meeting of Creditors

The Debtor's Section 341(a) Meeting of Creditors was held on January 17, 2024. The Debtor's Initial Debtor Interview has not been scheduled as of the date of filing this Disclosure Statement.

#### c.   Bar Date

The Court established February 16, 2024 (the "Bar Date") as the deadline for Creditors, excluding Governmental Units, to file proofs of Claim in this Chapter 11 Case.

### B.  Other Significant Events During the Bankruptcy

On January 16, 2024, the Debtor filed a *Motion For Authorization To Enter Into New Lease Agreement With LMAN LNT LLC Pursuant To 11 U.S.C. §§ 363(C) And 365*, which, among other things, seeks to approve a new lease for the Debtor's Fairfield, New Jersey location. A hearing on the motion is currently scheduled for February 6, 2024.

The Court scheduled a status conference for January 30, 2024 at 11:00 a.m. The status conference has been adjourned until February 13, 2024.

### C.  Current and Historical Conditions

The Debtor is current on all post-petition obligations. Debtor's Monthly Operating Reports will be filed pursuant to the United States Trustee Guidelines. [*See*, *e.g.* ECF 133].

## ARTICLE VI.
## SUMMARY OF THE PLAN OF REORGANIZATION

The following is a summary of the significant elements of the Plan. This Disclosure Statement is qualified in its entirety by reference to the Plan. This summary does not describe every element of the Plan and is not a substitute for a complete review of the Plan. All parties are encouraged to review the Plan in its entirety for a full understanding of its provisions and impact on Creditors and Interest Holders. If there are any inconsistencies between the provisions of this Disclosure Statement and the provisions of the Plan, the provisions of the Plan will control.

4888-6021-6983, v. 3

### A. What Creditors Will Receive Under the Proposed Plan

The Plan classifies claims in various classes. The Plan states whether each class of claims is impaired or unimpaired. The Plan provides the treatment each class will receive. A copy of the Plan is annexed hereto as **Exhibit A**.

### B. Classification of Claims

As set forth in Articles III and IV of the Plan, the Plan classifies the various Claims against the Debtor and specifies their treatment pursuant to sections 1122 and 1123(a) of the Bankruptcy Code. All Claims, as defined herein and in section 101(5) of the Bankruptcy Code, except the Fee Claims, Administrative Expense Claims, U.S. Trustee Fees, and Priority Tax Claims, are placed into the Classes set forth below. Pursuant to section 1123(a)(1) of the Bankruptcy Code, Fee Claims, Administrative Expense Claims, U.S. Trustee Fees, and Priority Tax Claims, as described below, are not classified in the Plan, and the treatment of such Claims is set forth in Article III below. A Claim is placed in a particular Class only to the extent that the Claim falls within the description of that Class and is classified in other Classes to the extent that any portion of such Claim falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, discharged, released or otherwise settled prior to the Effective Date.

### C. Unclassified Claims

The following are the unclassified Claims: Fee Claims, Administrative Expense Claims, U.S. Trustee Fees, and Priority Tax Claims. Unclassified Claims are not Impaired by the Plan. Each Holder of an unclassified Claim is conclusively presumed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan.

### D. Unimpaired Classes of Claims

Each holder of an Allowed claim in the following class is unimpaired and deemed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan: Priority Non-Tax Claims.

### E. Impaired Classes of Claims

Each Holder of an Allowed Claim in the following classes is impaired and entitled to vote to accept or reject the Plan:

| Class | Claims & Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | East West Bank | Impaired | Entitled to Vote |
| 3 | AmeriCredit Financial Services, Inc. dba GM Financial | Impaired | Entitled to Vote |
| 4 | Subaru Motors Finance | Impaired | Entitled to Vote |

14

| Class | Claims & Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 5 | General Unsecured Creditors | Impaired | Entitled to Vote |

## ARTICLE VII.
## TREATMENT OF UNCLASSIFIED CLAIMS

### A. Administrative Expenses Claims

Administrative Expense Claims are Claims for costs or expenses of administering the Debtor's Chapter 11 Case, which are Allowed under Bankruptcy Code section 503(b) or otherwise.  The Bankruptcy Code requires that all administrative expenses be paid on the Effective Date, unless a particular Claimant agrees to different treatment.  The Debtor or Reorganized Debtor, as appropriate, shall pay each Holder of an Allowed Administrative Expense Claim in full, in Cash, on the later of (i) fifteen (15) days after the Effective Date; or (ii) fifteen (15) days after the date on which such Claim becomes an Allowed Administrative Expense Claim.  Notwithstanding anything in the Plan to the contrary, the Holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by the Holder of an Allowed Administrative Expense Claim and Debtor/Reorganized Debtor.

### B. Priority Tax Claims

The Reorganized Debtor shall pay any Allowed Priority Tax Claims, in full, in Cash, without interest, as soon as practicable after the later of (i) fifteen (15) days after the Effective Date, (ii) fifteen (15) days after the date on which such Claim becomes an Allowed Priority Tax Claim, (iii) at the option of the Debtor prior to the Effective Date in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, in Cash, in an aggregate amount of such Allowed Priority Tax Claim payable in regular quarterly installments over a period of not more than five (5) years from the Petition Date, or (iv) such other treatment agreed to by the Debtor and the Holder of such Allowed Priority Tax Claim; *provided, however*, that the Holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with any Priority Tax Claim.  Any demand for any such penalty will be deemed disallowed by Confirmation of the Plan.

The Debtor is unaware of any Priority Tax Claims.

### C. U.S. Trustee Fees.

All U.S. Trustee Fees due and payable prior to the Effective Date shall be paid by the Debtor on the Effective Date.  After the Effective Date, the Reorganized Debtor shall pay any and all U.S. Trustee when due and payable.  The Debtor shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Reorganized Debtor shall File with the Bankruptcy Court quarterly reports when they become due using UST Form 11-PCR.  The Debtor and the Reorganized Debtor shall remain obligated to pay U.S. Trustee Fees to the United States Trustee until the earliest of the Chapter 11 Case being closed, dismissed, or converted to a case under Chapter 7 of the

15

Bankruptcy Code. The United States Trustee shall not be required to File any Administrative Expense Claim in the Chapter 11 Case and shall not be treated as providing any release under this Plan.

The Debtor does not anticipate that there will be any outstanding U.S. Trustee Fees, except those that have not become due in the ordinary course at the time of confirmation.

### D. Fee Claims.

All Persons seeking an award by the Bankruptcy Court of Fee Claims (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is 45 days after the Effective Date and (ii) shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (a) on the date upon which the Order relating to any such Allowed Fee Claim is entered, or (b) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtor or Reorganized Debtor, as applicable. The Reorganized Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after Confirmation in the ordinary course and without the need for Bankruptcy Court approval.

The Debtor estimates the following Fee Claims:

| Name of Professional and Role in Case | Estimated Amount of Fee Claim | Proposed Payment |
|---|---|---|
| Trenk Isabel Siddiqi & Shahdanian P.C.<br><br>*Attorneys for Debtor* | $ 75,000. | Payment in full on Effective Date or as otherwise agreed upon between the Debtor and the professional. |
| Vestcorp LLC<br><br>*Accountant for Debtor* | $ 20,000. | Payment in full on Effective Date or as otherwise agreed upon between the Debtor and the professional. |
| A. Atkins Appraisal Corp.<br><br>*Appraiser for Debtor* | $5,000. | Payment in full on Effective Date or as otherwise agreed upon between the Debtor and the professional. |

## ARTICLE VIII.
## TREATMENT OF CLAIMS

### A. Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | AMOUNT OWED | TREATMENT |
|---|---|---|---|---|---|
| 2 | East West Bank | Y | Y | $3,351,651.70 (East West Bank disputes this amount) | The Debtor shall satisfy the Claim as follows: Payment of the Allowed Claim over 15 years with interest at 7.5% per annum. |
| 3 | AmeriCredit Financial Services, Inc. dba GM Financial | N | Y | $8,298.86 (less any payments received post-petition) | The Debtor shall satisfy the Claim as follows: Payment of the Allowed Claim over 15 years with interest at 0% per annum. |
| 4 | Subaru Motors Finance | N | Y | $24,081.14 (less any payments received post-petition) | The Debtor shall satisfy the Claim as follows: The Debtor shall satisfy this Claim by payment of the Allowed Claim in equal installments over 15 years with interest at 4.49%. |

**B.  Classes of Priority Unsecured Claims**

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The Debtor does not have any such claims.

**C.  Class of General Unsecured Claims**

General unsecured claims are uncollateralized claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims:

4888-6021-6983, v. 3

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
| 5 | General unsecured claims<br>• Total amount of claims = (this amount is still being determined in light of the fact that certain claims are subject to objection and reclassification, but are anticipated at approximately $4,500,000) | N | Y | Allowed Class 5 Claims shall be paid a *pro rata* portion of $1,500,000. The $1,500,000 will be paid on a pro rata basis over 5 years on a quarterly basis (20 quarters). |

### D. Class of Interests

All equity interests in the Debtor will be extinguished on the Effective Date and equity interest in the Reorganized Debtor or the assets of the Debtor shall be issued or sold (as applicable) on the Effective Date to Plan Proponent Alex Chobitko (or a company owned or controlled by him) upon payment of $150,000 in new value ("New Value Contribution"). Mr. Chobitko is a businessperson who resides in New York. He has done business with the Debtor over the past seven (7) or more years. He is not a creditor of the Debtor.

### E. Means of Effectuating the Plan

The Plan will be funded, in part, by the New Value Contribution. These funds shall be held in escrow by Trenk Isabel Siddiqi & Shahdanian P.C. and disbursed in accordance with this Plan.

The remainder of the Plan shall be funded by the Debtor's continuing operating receipts, as set forth in the Debtor's projections.

## ARTICLE IX.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A. Disbursing Agent.

The Reorganized Debtor shall be the "**Disbursing Agent**" for all payments to be made under the Plan.

### B. Manner of Payment.

Any payment of Cash under the Plan may be made either by check drawn or by wire transfer from a domestic bank, at the option of the Disbursing Agent.

### C. Payments and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims

18

shall be paid from the Disputed Claim Reserve established under Section 8.4 of the Plan. No distribution shall be made on a Claim where only a portion of such Claim is disputed until such dispute is resolved by settlement or Final Order.

### D.  Disputed Claim Reserve.

To the extent that the Disbursing Agent makes a distribution hereunder to a Class prior to the resolution of all Disputed Claims of such Class, the Disbursing Agent shall reserve an amount for any Disputed Claims in such Class equal to the amount that such Holders of Disputed Claims in such Class would be entitled to receive under the Plan if such Disputed Claims were Allowed in the asserted amount of the Claim.

### E.  Transmittal of Distributions to Parties Entitled Thereto.

All distributions by check shall be deemed made at the time such check is deposited in the United States mail, postage prepaid. Any distributions by wire transfer shall be deemed made as of the date of the wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim in respect thereof or provided in the Plan, any distribution required under the Plan on account of an Allowed Claim, shall be mailed to (i) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution, (ii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Claim to receive distributions, (iii) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records. The Holder of a Claim shall be required to promptly notify the Reorganized Debtor and the Bankruptcy Court of any change in its mailing address.

### F.  Distribution of Unclaimed Property.

Except as otherwise provided in the Plan, any distribution under the Plan which is unclaimed after three (3) months following any Distribution Date shall be forfeited, and such distribution, together with any interest earned thereon, and shall return to and revest in the Reorganized Debtor.

### G.  Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the following Business Day but shall be deemed to have been completed as of the required date.

### H.  Setoffs and Recoupment.

Subject to the terms of the Plan and pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Debtor or Reorganized Debtor, as appropriate, may but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Claims of any nature whatsoever the Debtor may have against the

Holder of such Claim.

**I.  Fractional Cents and *De Minimis* Distributions.**

Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan.  Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).  Any distribution of less than $10.00 will be considered *de minimis,* and Holders of Allowed Claims that are entitled to an interim or final distribution of less than $10.00 will not receive any distribution.  Such funds will remain with and revest in the Reorganized Debtor.

**J.  Prepayment.**

Except as otherwise provided herein or the Confirmation Order, the Disbursing Agent shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

**K.  Allowance and Disallowance of Claims.**

(a)    **Allowance of Claims**.  Except as expressly provided in the Plan, no Claims shall be deemed Allowed by virtue of the Plan or the Confirmation Order unless and until such Claim is deemed Allowed under the Bankruptcy Code, or the Bankruptcy Court enters a Final Order in the Chapter 11 Case allowing such Claim.  Notwithstanding the foregoing, any Claim included in the Debtor's Schedules that is not listed as contingent, unliquidated, and/or disputed shall be an Allowed Claim.  Any Proof of Claim Filed in an unliquidated amount shall be deemed Allowed in the amount listed in the Debtor's Schedules as liquidated, not contingent and not disputed. The Allowance and disallowance of Claims shall be in all respects subject to the provisions of section 502 of the Bankruptcy Code.

(b)    **Disallowance of Claims**.  Except as expressly provided in the Plan, all Claims held by Persons against whom the Debtor or Reorganized Debtor, as appropriate, have filed or commenced or may in the future file or commence a Claim under sections 542, 543, 544, 547, 548, 549, 550, 551, 553 or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code.  The Holders of any and all Claims filed with the Bankruptcy Court after the Bar Date shall be deemed disallowed without further action by the Debtor or Reorganized Debtor and without any further notice to or action, order, or approval of the Bankruptcy Court.  The Holders of any and all Claims Filed with the Bankruptcy Court after the relevant Bar Date shall not be entitled to a distribution, unless otherwise allowed by Final Order of the Bankruptcy Court.

**L.  Resolution of Disputed Administrative Expense Claims and Disputed Claims.**

(a)    **Prosecution of Objections to Claims.**  Except as otherwise set forth herein, prior to the Effective Date, the Debtor shall have standing and the right to commence and pursue objections to Claims, and the Reorganized Debtor shall have such standing after the Effective Date. All objections to Claims shall be Filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made. The Debtor reserves the right to seek an extension of such date in accordance with D.N.J. LBR 3007-1(c).

4888-6021-6983, v. 3

(b)    **Objections to Claims**.  An objection to the allowance of a Claim shall be in writing and shall be Filed with the Bankruptcy Court by the Debtor or Reorganized Debtor, as applicable.  Except as expressly set forth herein, nothing herein, in the Confirmation Order or in any Order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, including any Avoidance Action, right of setoff or recoupment or other legal or equitable defense which the Debtor had immediately prior to the commencement of the Chapter 11 Case against or with respect to any Claim.  Except as set forth herein, upon Confirmation, the Debtor or Reorganized Debtor shall have, retain, reserve and be entitled to assert all such Claims, rights of setoff and recoupment and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Chapter 11 Case against or with respect to any Claim.

### M. Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or any Class of Claims or Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before approving the Disclosure Statement.

## ARTICLE X.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.  Executory Contracts and Unexpired Leases.

On the Effective Date, all Executory Contracts and unexpired leases not rejected on or before Confirmation will be deemed assumed.  The Confirmation Order shall constitute an order approving such assumption as of the Effective Date.  No cure payments or adequate assurance of future performance shall be due.

### B.  Bar to Rejection Damages.

All Proofs of Claim for Claims arising from a rejection of an Executory Contract or unexpired leases must be filed with the Bankruptcy Court within the earlier of (i) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection; (ii) the date set forth in D.N.J. LBR 3003-1(b) or (ii) thirty (30) days after Confirmation.  Any Proofs of Claim that are not filed timely shall be barred forever from assertion.

## ARTICLE XI.
## CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.  Conditions Precedent to the Effective Date.

The Effective Date shall not occur, and the Plan shall not be consummated, unless and until each of the following conditions have been satisfied:

(a) the Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtor;

(b) the Confirmation Order shall be a Final Order and no stay of the Confirmation

21

Order shall then be in effect;

(c) the Plan has not been materially amended, altered, or modified as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made with consent of the Debtor.

## B. Notice of Effective Date.

The Debtor shall file and serve on all Holders of Claims a Notice of Effective Date with the Bankruptcy Court within three (3) days after the occurrence of the Effective Date.  Such notice will include all relevant deadlines put into effect by the occurrence of the Effective Date.

## C. Waiver of Conditions Precedent to the Effective Date.

Each of the conditions precedent to the occurrence of the Effective Date  may only be waived in whole or in part by the Plan Proponent without notice to or leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

## ARTICLE XII.
## EFFECTS OF CONFIRMATION

## A. Authority to Effectuate Plan.

Upon the Effective Date, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court or the Plan Proponent.  The Plan Proponent shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action necessary to achieve consummation and carry out the Plan and to effectuate the transactions provided for thereunder.

## B. Binding Effect.

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind all Holders of Claims.  Subject to the terms of the Plan, upon the Effective Date, every Holder of a Claim shall be precluded and permanently enjoined from asserting against the Debtor and/or Reorganized Debtor any Claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the Petition Date.

## C. Discharge of the Debtor.

(a)     Except as provided in the Plan or the Confirmation Order, upon the Effective Date, the Debtor shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been

disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted the Plan.

(b)      Except as provided in the Plan or the Confirmation Order, upon the Effective Date, all Persons shall be precluded from asserting against the Debtor, the Reorganized Debtor and their respective members, shareholders, officers, directors, partners, attorneys or advisors, any other or further Claims relating to the Debtor based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.   In accordance with the foregoing, except as provided in the Plan, the Trust Distribution Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all Claims against the Debtor, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim.

### D.  Release and Discharge of Committee.

Effective on the Effective Date, any committee of creditors appointed by the Office of the United States Trustee, if any, shall be disbanded and it and its professionals released from their duties and obligations.

### ARTICLE XIII.
### EFFECT OF PLAN ON CLAIMS AND INTERESTS

### A.  General Injunction.

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE CONFIRMATION ORDER WILL PROVIDE THAT ALL PERSONS AND ENTITIES WHO HELD, HOLD, OR MAY HOLD CLAIMS AGAINST THE DEBTOR ARE PERMANENTLY ENJOINED, ON AND AFTER CONFIRMATION, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM OR TAKING ANY ACT TO RECOVER SUCH CLAIM OUTSIDE OF THE TRUST DISTRIBUTION PROCEDURES DISCUSSED IN THE PLAN AND THE BANKRUPTCY CODE AND BANKRUPTCY RULES, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTOR ON ACCOUNT OF ANY SUCH CLAIM, (C) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTOR ON ACCOUNT OF ANY SUCH CLAIM AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTOR ON ACCOUNT OF ANY SUCH CLAIM.**

### B.  Release by Debtor.

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE**

CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE RELEASED PARTIES ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTOR, ITS ESTATE AND ANY PERSON SEEKING TO EXERCISE THE RIGHTS OF THE DEBTOR OR ITS ESTATE AND ITS PROPERTY (AND EACH SUCH RELEASED PARTY SHALL BE DEEMED RELEASED BY THE DEBTOR AND ITS ESTATE AND ITS RESPECTIVE PROPERTY) FROM ANY AND ALL CLAIMS RELATING TO THE DEBTOR, ITS ESTATE OR ITS AFFILIATES, THE CONDUCT OF THE DEBTOR'S BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THE PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR, ITS ESTATE OR ITS AFFILIATES, ON THE ONE HAND, AND ANY RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; *PROVIDED* THAT, TO THE EXTENT THAT A CLAIM IS DETERMINED BY A FINAL ORDER TO HAVE RESULTED FROM FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT OF A RELEASED PARTY, SUCH CLAIM SHALL NOT BE SO RELEASED AGAINST SUCH RELEASED PARTY; *PROVIDED FURTHER* THAT, THE FOREGOING "DEBTOR RELEASE" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OF THE DEBTOR OR ITS CHAPTER 11 ESTATE AGAINST A RELEASED PARTY (OR OF A RELEASED PARTY AGAINST THE DEBTOR AND ITS CHAPTER 11 ESTATE) ARISING UNDER ANY CONTRACTUAL OBLIGATION OWED TO THE DEBTOR THAT IS ENTERED INTO OR ASSUMED PURSUANT TO THE PLAN.

**C. Release by Holders of Claims.**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, THE RELEASING PARTIES SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS RELATING TO THE DEBTOR, ITS ESTATE OR ITS AFFILIATES, THE CONDUCT OF THE DEBTOR'S BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THE PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS

**GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG THE RELEASING PARTIES AND ANY RELEASED PARTY, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; *PROVIDED* THAT, TO THE EXTENT THAT A CLAIM IS DETERMINED BY A FINAL ORDER TO HAVE RESULTED FROM FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT OF A RELEASED PARTY, SUCH CLAIM SHALL NOT BE SO RELEASED AGAINST SUCH RELEASED PARTY.**

**D. Exculpation; Limitation of Liability.**

**FROM AND AFTER THE EFFECTIVE DATE, NONE OF THE EXCULPATED PARTIES SHALL HAVE OR INCUR ANY LIABILITY FOR, AND EACH EXCULPATED PARTY SHALL BE RELEASED FROM, ANY CLAIM TO ANY OTHER EXCULPATED PARTY, TO ANY HOLDER OF A CLAIM, OR TO ANY OTHER PARTY IN INTEREST, FOR ANY ACT OR OMISSION THAT OCCURRED DURING AND IN CONNECTION WITH THIS CHAPTER 11 CASE OR IN CONNECTION WITH THE PREPARATION AND FILING OF THIS CHAPTER 11 CASE, THE FORMULATION, NEGOTIATION, OR PURSUIT OF CONFIRMATION OF A PLAN, THE CONSUMMATION OF THE PLAN, AND THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR CLAIMS ARISING FROM THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, OR BREACH OF THE FIDUCIARY DUTY OF LOYALTY OF ANY EXCULPATED PARTY, IN EACH CASE SUBJECT TO DETERMINATION OF SUCH BY FINAL ORDER OF A BANKRUPTCY COURT OF COMPETENT JURISDICTION AND PROVIDED THAT ANY EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THE PLAN. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE DEBTOR AND ITS RESPECTIVE OFFICERS, BOARD AND RESPECTIVE EMPLOYEES, ATTORNEYS, FINANCIAL ADVISORS, AND OTHER PROFESSIONALS SHALL BE ENTITLED TO AND GRANTED BENEFITS OF SECTION 1125(E) OF THE BANKRUPTCY CODE AND THE CHANNELING INJUNCTION.**

**E. Vesting of Assets in Reorganized Debtor.**

Except as otherwise provided in the Plan, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens expressly preserved and continued under the Plan). On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its businesses and may use, acquire or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Without limiting any of the foregoing, the Reorganized Debtor may pay the charges incurred on or after the Effective Date for Professionals' fees, disbursements, expenses, or related support services without application to

the Bankruptcy Court.

**F.  Causes of Action.**

Except as set forth otherwise herein, the Reorganized Debtor, on behalf of and for the benefit of the Debtor's estate, shall be vested with and shall retain and may enforce any and all Claims of any kind or nature whatsoever held by, through or on behalf of the Debtor and/or its Estate against any other Person, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date whether or not such Claims and Interests are specifically identified in the Disclosure Statement accompanying the Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date.

## ARTICLE XIV.
## RETENTION OF JURISDICTION

Until such time as a Final Decree is entered by the Bankruptcy Court, the Bankruptcy Court shall retain jurisdiction of this Chapter 11 Case pursuant to the provisions of chapter 11 of the Bankruptcy Code to make such orders as are necessary or appropriate to carry out the provisions of the Plan, and with respect to the following matters:

(a)    To enable the Plan Proponent to consummate the Plan and to resolve any disputes arising therefrom;

(b)    To adjudicate all controversies concerning the classification, estimation or allowance of any Claim herein;

(c)    To determine the classification, estimation and priority of all claims against the Debtor and to re-examine any Claims which may have been allowed;

(d)    To determine applications for the rejection or assumption of Executory Contracts or unexpired leases pursuant to the provisions of the Plan which are not determined prior to Confirmation and to determine allowance of Claims for damages with respect to rejection of any such Executory Contracts or unexpired leases within such time as the Bankruptcy Court may direct;

(e)    To oversee and issue further appropriate orders respecting disbursement of amounts deposited as may be required by the Plan;

(f)    To conduct hearings on valuation, as necessary, and to determine whether any party in interest is entitled to recover against any Person any Claim, whether arising under section 506(c) of the Bankruptcy Code, or arising out of a voidable preference, a fraudulent transfer, or otherwise;

(g)    To hear and determine all applications for compensation and other Administrative Expense Claims;

(h)    To hear and determine any and all pending adversary proceedings or contested matters and all claims or causes of action related thereto or arising therefrom,

26

whether or not presently asserted in the operative complaint therein;

(i)    To hear and determine any and all Claims and causes of action that belong to the Debtor or its Estate on or prior to the Effective Date, including but not limited to, such Claims and causes of action that vest in the Trust on the Effective Date pursuant to the Plan, whether or not asserted prior to the occurrence of the Effective Date, including but not limited to, all Claims and causes of action presently asserted in, or that could be asserted in, the Insurance Coverage Adversary Proceeding;

(j)    To determine all causes of action which may exist in favor of the Debtor or the Trust;

(k)    To determine any modification of the Plan after confirmation pursuant to section 1127 of the Bankruptcy Code;

(l)    To enter any order, including injunctions, necessary to establish and enforce the rights and powers of the Debtor, or the Trust, under the Plan;

(m)    To enter the Final Decree pursuant to Rule 3022 of the Bankruptcy Rules;

(n)    To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan;

(o)    To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of the Bankruptcy Court in the Chapter 11 Case entered on or before Confirmation;

(p)    To hear and determine any and all objections to payments to be made under the Plan;

(q)    To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(r)    To adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof;

(s)    To adjudicate all causes of action to recover all assets and properties of the Debtor or the Trust wherever located;

(t)    To enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and the Trust, and to impose such limitations, restrictions, terms and conditions on such title rights and powers as the Bankruptcy Court may deem necessary or appropriate;

(u)    Over matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets;

(v)    Over conflicts and disputes among the Trust, the Reorganized Debtor and

27

holders of Claims; and

(w)    To make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, or enforcing the provisions thereof.

In addition, the Bankruptcy Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code.  If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Plan Proponent, or its successors, elects to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

## ARTICLE XV.
## MISCELLANEOUS PROVISIONS OF THE PLAN

### A.  Amendment or Modification of the Plan.

On or before the Effective Date, the Plan or any exhibits hereto may be amended, modified, or supplemented by the Plan Proponent in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after Confirmation, the Reorganized Debtor or Trust Administrator, as applicable, may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.  The Plan Proponent may make appropriate technical adjustments and modifications to the Plan prior to the Effective Date without further order or approval of the Bankruptcy Court.

### B.  Revocation or Withdrawal of the Plan.

The Plan Proponent reserves the right to revoke or withdraw the Plan before Confirmation.  If the Plan Proponent revokes or withdraws the Plan before Confirmation, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or to prejudice in any manner the rights of the Plan Proponent in any further proceedings.

### C.  Reports.

Until a Final Decree is entered, the Debtor or the Reorganized Debtor, as the case may be, shall submit all post-Confirmation quarterly reports to the U.S. Trustee as required by the U.S. Trustee guidelines (with a copy served on the Office of the U.S. Trustee) setting forth all receipts and disbursements of the Debtor.  The first report shall be filed within thirty (30) days after the end of the quarter in which the Effective Date occurs.  The Reorganized Debtor shall be responsible to request that a Final Decree be entered in this Chapter 11 Case.  The Reorganized Debtor shall also be responsible for any quarterly fees due to the U.S. Trustee from and after the Effective Date until the Chapter 11 Case is closed.

### D. Severability of Plan Provisions.

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponent, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### E. No Interest.

Except as expressly stated in the Plan, no interest, penalty or late charge is allowed or shall be paid on any Claim.

### F. Allocation of Distributions Between Principal and Interest.

To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid prepetition interest.

### G. Notices.

Any notices or requests by parties in interest under or in connection with the Plan shall be in writing and served either by:  (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

**IF TO THE DEBTOR:**

TRENK ISABEL SIDDIQI &
SHAHDANIAN P.C.
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 Mt. Pleasant Avenue, Suite 2370
Livingston, New Jersey 07037
Email:  rtrenk@trenkisabel.law
Email:  rroglieri@trenkisabel.law

### H. Controlling Documents.

Notwithstanding anything to the contrary contained herein or in the Disclosure Statement,

4888-6021-6983, v. 3

in the event and to the extent that any provision of the Plan is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan shall control and take precedence.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

### I.  Filing of Additional Documents.

Prior to the Effective Date, the Plan Proponent may File with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan that are not inconsistent with the terms of the Plan. On or after the Effective Date, the Reorganized Debtor may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate the terms and conditions of the Plan.

### J.  Reservation of Rights.

If the Plan is not confirmed by the Bankruptcy Court for any reason, the rights of the Debtor and all parties in interest in the Bankruptcy Case shall and will be reserved in full. Statements and provisions made in the Plan or in the Disclosure Statement are made only for the purpose(s) of the Plan.  If the Plan is withdrawn, the Confirmation Order is not entered, or if the Effective Date does not occur, no Person shall be bound by or deemed prejudiced by any such statement or provision.

### K.  Computation of Time.

In computing any period of time prescribed or allowed by the Plan, unless otherwise specifically designated herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

### L.  Successors and Assigns.

The rights, duties and obligations of any Person named or referred to in the Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

### M.  Waiver of Subordination.

Notwithstanding any provision of the Plan to the contrary, all holders of Claims shall be deemed to have waived any and all contractual subordination rights to which they may have with respect to the distributions made pursuant to the Plan and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving distributions under the Plan.

### N.  Post-Effective Date Professional Fees.

The reasonable fees and actual and necessary expenses incurred after the Effective Date by professionals for the Reorganized Debtor shall be paid by the Reorganized Debtor upon the submission of an invoice to the Reorganized Debtor without the need for further notice to any Person or approval by the Bankruptcy Court.

4888-6021-6983, v. 3

### O.  Governing Law.

Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (a) the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (b) governance matters shall be governed by the laws of the State of New Jersey, without giving effect to the principles of conflict of law thereof.

### P.  Headings.

Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

### Q.  No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by any entity with respect to any matter set forth herein.

## <u>ARTICLE XVI.</u>
## RISK FACTORS/TAX CONSEQUENCES

**HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR INCORPORATED BY REFERENCE, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION. THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE THE DEBTOR'S ACTUAL PERFORMANCE OR ACHIEVEMENTS TO BE MATERIALLY DIFFERENT FROM THOSE THEY MAY PROJECT, AND THE DEBTOR UNDERTAKES NO OBLIGATION TO UPDATE ANY SUCH STATEMENT.**

### A.  Tax Consequences of Plan

| CIRCULAR 230 DISCLAIMER |
| --- |
| **To ensure compliance with requirements imposed by the Internal Revenue Service (the "IRS"), the Debtor informs all creditors that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter(s) addressed herein.** |

**CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR**

31

**OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS**. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues the Plan may present to Debtor. The Plan Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

Confirmation may have federal income tax consequences for the Debtor and Holders of Claims. The Plan Proponent has not obtained and do not intend to request a ruling from the Internal Revenue Service, nor has the Plan Proponent obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by Confirmation of the Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain. Accordingly, each Holder of a Claim is strongly urged to consult with his or her own tax advisor regarding the federal, state, local and foreign tax consequences of the Plan.

### B.  Bankruptcy Risk Factors

The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan.  You are encouraged to supplement this summary with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety, and in consultation with your own advisors.  Based on the analysis of the risks summarized below, the Debtor believes that the Plan is viable and will meet all requirements of confirmation.

### a.  Risk of Non-Confirmation of the Plan

Although the Plan Proponent believes that the Plan satisfies all legal requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed. There can also be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate a solicitation of votes to accept or reject the Plan. If the Plan is not confirmed and consummated, there can be no assurance that the Chapter 11 Case will continue rather than be dismissed. The Bankruptcy Court, which sits as a court of equity, may exercise substantial discretion with respect to the affairs of the Debtor during the Chapter 11 Case. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a plan and requires, among other things, that the value of distributions to dissenting creditors not be less than the value of distributions such creditors and shareholders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. Although the Plan Proponent believes that the Plan will meet such tests, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

The Debtor could experience material adverse changes in its liquidity as a result of such delay and increased administrative fees and expenses.

### b.  The Debtor May Object to the Amount or Classification of a Claim

Except as otherwise provided in the Plan, the Plan Proponent reserves the right to object

to the amount or classification of any Claim under the Plan.  The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is subject to an objection.  Any Holder of a Claim that is subject to an objection thus may not receive their expected share of the estimated distributions described in this Disclosure Statement.

### c.   Risk of Additional or Larger Claims

The Disclosure Statement and its attached exhibits necessarily include estimates, including estimates of future events.  These estimates include, but are not limited to, estimates of future income and expenses, estimates as to the total amount of Claims that will be asserted against the Debtor and the outcome of Disputed Claims.  The Plan Proponent believes that the estimates presented are reasonable and appropriate under the circumstances.  Nevertheless, there is a risk that unforeseen future events may cause one or more of these estimates to be materially inaccurate.  Among the potential risks is that additional Administrative Expense Claims may be asserted, that Disputed Claims may be resolved at higher amounts than expected or that the resolution of such Claims may require the expenditure of unanticipated professional fees. If one or more of these estimates proves to be inaccurate, the amount of funds available for Distribution pursuant to the Plan may be reduced.

### d.   Other Parties in Interest Might be Permitted to Propose Alternative Plans of Reorganization

Under the Bankruptcy Code, a debtor in possession initially has the exclusive right to propose and solicit acceptances of a plan of reorganization. However, such exclusivity period can be reduced or terminated upon order of the Bankruptcy Court, or it may expire under the applicable provisions of the Bankruptcy Code. If such an order were to be entered or such expiration were to occur, other parties in interest would then have the opportunity to propose alternative plans of reorganization.

If other parties in interest were to propose an alternative plan of reorganization following expiration or termination of the Debtor's exclusivity period, such a plan may be less favorable to the Debtor, its Estate, and its stakeholders. In addition, if there were competing plans of reorganization, the Chapter 11 Cases would likely become longer, more complicated, and more expensive, thereby reducing recoveries to holders of Claims.

### e.   Non-Consensual Confirmation

If any Impaired Class of Claims does not accept or is deemed not to accept a plan of reorganization, a Bankruptcy Court may nevertheless confirm such plan at the proponent's request if at least one Impaired Class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and as to each impaired class that has not accepted the plan, the Bankruptcy Court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. If any Class votes to reject or is deemed to reject the Plan, then these requirements must be satisfied with respect to such rejecting Class. The Debtor believes that the Plan satisfies these requirements.

### f.   Parties in Interest May Object to the Debtor's Classification of Claims

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if the claim or interest is substantially similar to the other claims or interests in that class. Parties in interest may object to the classification of certain claims and interests both on the grounds that certain claims and interests have been improperly placed in the same Class and/or that certain claims have been improperly placed in different Classes. The Plan Proponent believes that the classification of Claims under the Plan complies with the requirements of the Bankruptcy Code because the Classes established under the Plan each encompass Claims that are substantially similar to similarly classified Claims. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Parties in interest may object to the classification of certain Claims both on grounds that certain Claims have been improperly placed in the same Class and/or that certain Claims and Interests have been improperly placed in different Classes.

### g.   The Recovery to Holders of Allowed Claims

Due to the inherent uncertainties associated with projecting financial results, the projections contained in this Disclosure Statement should not be considered assurances or guarantees of the amount of Claims that may be allowed in the various Classes. While the Debtor believes that the projections and estimates contained in this Disclosure Statement are reasonable, to the extent that Claims are allowed at numbers or amounts that are higher than the total projected number or valuation ranges for each Class, distributions/recoveries to holders of Claims may be lower, and there can be no assurance that the distributions/recoveries set forth in the projections in the Disclosure Statement will be realized. Also, because the Liquidation Analysis, distribution projections, and other information contained herein and attached hereto are estimates only, the timing and amount of actual distributions to holders of Allowed Claims, if applicable, may be affected by many factors that cannot be predicted.

### h.   Amendment of Plan Prior to Confirmation by the Debtor

The Plan Proponent, subject to the terms and conditions of the Plan, reserves the right to modify the terms and conditions of the Plan or waive any conditions thereto if and to the extent necessary or desirable for confirmation. The potential impact of any such amendment or waiver on holders of Claims cannot presently be foreseen but may include a change in the economic impact of the Plan on some or all of the proposed Classes or a change in the relative rights of such Classes.

### i.   Financial Projections

The Debtor has prepared financial projections based on certain assumptions, as set forth herein. The projections have not been compiled, audited, or examined by independent accountants, and neither the Debtor nor its advisors make any representations or warranties regarding the accuracy of the projections or the ability to achieve forecasted results.

Many of the assumptions underlying the projections are subject to significant uncertainties that are beyond the control of the Debtor, including the timing, Confirmation, and consummation of the Plan. Some assumptions may not materialize, and unanticipated events and

circumstances may affect the actual results. Projections are inherently subject to substantial and numerous uncertainties and to a wide variety of significant economic, and operational risks, and the assumptions underlying the projections may be inaccurate in material respects. In addition, unanticipated events and circumstances occurring after the approval of this Disclosure Statement by the Bankruptcy Court including any natural disasters, terrorist attacks, or health epidemics may affect the actual financial results achieved. Such results may vary significantly from the forecasts and such variations may be material. The Debtor's projections reflect expectations of continued donor support. However, the Debtor cannot state with certainty that such donation programs will achieve their targeted results.

### j.   Voting Requirements

If sufficient votes are not received, the Plan Proponent may seek to confirm an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the holders of Allowed Claims as those proposed in the Plan.

### k.   Time Risk

There is a material risk that failure to emerge from the Chapter 11 Case in a timely manner could endanger the future of the Debtor. In order to rebuild trust of its vendors and customers, the Debtor must emerge from the cloud of this Chapter 11 Case. If the support of the vendors and customers is substantially reduced from projections, the Debtor could lack the means to meet their operational needs or otherwise emerge from bankruptcy. Timely emergence from Chapter 11 is essential to the Debtor's ability to maintain its operations and mission.

Substantial professional fees will continue to accrue until a plan is confirmed and becomes effective. At this time, the Debtor's bankruptcy estate bears the burden for the fees of the professionals and advisors to the Debtor.  In addition, the Debtor is required to pay the fees of its lender, East West Bank.  The length of the case also requires continued fees for the United States Trustee.  Such fees are substantial.

### l.   Parties in Interest May Object to the Plan Based on Section 1129(a)(7) of the Bankruptcy Code

The Debtor may need to satisfy the "best interests of creditors" test, embodied in section 1129(a)(7) of the Bankruptcy Code. The Debtor will be prepared at confirmation to address those standards, including through the Liquidation Analysis, which shows that the Debtor satisfies the test, and/or through other expert testimony related to whether holders of Impaired Claims will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive in a liquidation under chapter 7. If the Bankruptcy Court determines that the Plan does not satisfy the requirements of the best interests test, to the extent it applies, the Plan may not be Confirmed or may only be Confirmed with modifications, including potential modifications to the nonconsensual third party releases included in the Plan. If the Plan cannot be Confirmed because of this issue, the Debtor's options going forward may be limited to: (1) reaching agreement on a fully consensual plan; (2) satisfying the best interest of creditors test; and (3) voluntary or involuntary dismissal.

### m. Historical Financial Information of the Debtor

As a result of the consummation of the Plan and the transactions contemplated thereby, the financial condition and results of operations of the Reorganized Debtor from and after the Effective Date may not be comparable to the financial condition or results of operations reflected in the Debtor's historical financial statements.

### C. Other Factors

### a. Plan Proponent Could Withdraw the Plan

Subject to, and without prejudice to, the rights of any party in interest, the Plan may be revoked or withdrawn before Confirmation by the Plan Proponent.

### b. Plan Proponent Has No Duty to Update

The statements contained in this Disclosure Statement are made by the Plan Proponent as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. Additionally, the Plan Proponent has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

### c. No Representations Outside this Disclosure Statement Are Authorized

No representations concerning or related to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than those contained in, or included with, this Disclosure Statement should not be relied upon in making the decision to accept or reject the Plan.

### d. No Legal or Tax Advice Is Provided by this Disclosure Statement

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each holder of a Claim should consult its own legal counsel and accountant as to legal, tax, and other matters concerning their Claim or Interest. This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

### e. No Admission Made

Nothing contained herein or in the Plan shall constitute an admission of, or shall be deemed evidence of, the tax or other legal effects of the Plan on the Debtor or holders of Claims or Interests.

### <u>ARTICLE XVII.</u>
### FEASIBILITY OF THE PLAN

As a condition to Confirmation, section 1129(a)(11) of the Bankruptcy Code involves the

feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of Debtor or any successor to Debtor under the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date. The Debtor maintains that this aspect of feasibility is satisfied as illustrated here, based upon the value of the Debtor's assets.

The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments. The Debtor believes that this second aspect of the feasibility requirement is met based on the work in progress and historical performance. A copy of the Debtor's projections is annexed hereto as **Exhibit B**. Accordingly, the Debtor believes, on the basis of the foregoing, that the Plan is feasible.

ALTHOUGH EVERY EFFORT WAS MADE TO BE ACCURATE, THE PROJECTIONS WERE NOT PREPARED WITH A VIEW TOWARD COMPLIANCE WITH THE GUIDELINES ESTABLISHED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTS OR IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPALS IN THE UNITED STATES, THE FINANCIAL ACCOUNTING STANDARDS BOARD, OR THE RULES AND REGULATIONS OF THE SECURITIES AND EXCHANGE COMMISSION REGARDING PROJECTIONS. FURTHERMORE, NEITHER THE DEBTOR'S ACCOUNTANTS, NOR ANY OTHER ACCOUNTANTS, HAVE COMPILED, EXAMINED, OR PERFORMED ANY PROCEDURES WITH RESPECT TO THE PROJECTIONS CONTAINED HEREIN, NOR HAVE THEY EXPRESSED ANY OPINION OR ANY OTHER FORM OF ASSURANCE ON SUCH INFORMATION OR ITS ACHIEVABILITY, AND ASSUME NO RESPONSIBILITY FOR, AND DISCLAIM ANY ASSOCIATION WITH, THE PROSPECTIVE FINANCIAL INFORMATION. WHILE PRESENTED WITH NUMERICAL SPECIFICITY, THE PROJECTIONS ARE BASED ON A VARIETY OF ASSUMPTIONS, WHICH MAY NOT BE REALIZED, AND ARE SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES, WHICH ARE BEYOND THE CONTROL OF THE DEBTOR. CONSEQUENTLY, THE PROJECTIONS SHOULD NOT BE REGARDED AS A REPRESENTATION OR WARRANTY BY THE DEBTOR, OR ANY OTHER PERSON, THAT THE PROJECTIONS WILL BE REALIZED. ACTUAL RESULTS MAY VARY MATERIALLY FROM THOSE PRESENTED IN THE PROJECTIONS. HOLDERS OF CLAIMS MUST MAKE THEIR OWN DETERMINATION AS TO THE REASONABLENESS OF SUCH ASSUMPTIONS AND THE RELIABILITY OF THE PROJECTIONS IN REACHING THEIR DETERMINATIONS OF WHETHER TO ACCEPT OR REJECT THE PLAN. THE DEBTOR'S FINANCIAL ADVISORS HAVE NOT EXPRESSED AN OPINION ON OR MADE A REPRESENTATION REGARDING THE ACHIEVABILITY OF THE FINANCIAL PROJECTIONS.

## ARTICLE XXVIII.
### BEST INTERESTS TEST

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis.  Under the Best Interest Test, if a claimant is in an impaired class and that claimant does not vote to accept the Plan, then that claimant must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claims.

In order for the Bankruptcy Court to be able to confirm the Plan, the Bankruptcy Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Debtor maintains that this requirement is met here for the following reasons:

A copy of the Debtor's liquidation analysis is annexed hereto as **Exhibit C**.

**TRENK ISABEL SIDDIQI & SHAHDANIAN P.C.**
Counsel for Debtor and Debtor-in-Possession,
IQ DENTAL SUPPLY, LLC

By:_____/s/ Richard D. Trenk_____
        RICHARD D. TRENK

**IQ DENTAL SUPPLY, LLC**

By:_/s/ Sergey Kunin_____
        SERGEY KUNIN,
        Managing Member

Dated:  January 30, 2024

4888-6021-6983, v. 3